IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CUMBERLAND AND OHIO CO. ) | |
| OF TEXAS, as Court-Appointed Receiver ) | |
| of the assets of Mid-America Energy, Inc. ) | |
| and Mid-America Oil & Gas, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:09-cv-182 |
| ) | Judge Trauger |
| BRYAN S. COFFMAN and ) | |
| DAVIS & COFFMAN, PLLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM

Pending before the court is the defendants' Motion to Dismiss for Forfeiture of Receiver's Existence (Docket No. 41)[1]. For the reasons discussed herein, this motion will be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of securities fraud violations that were the subject of several related lawsuits, which are now consolidated before this court under *Waldemar E. Albers Revocable*

---

[1] Also pending is the defendants' Motion for Extension of time to file rebuttal expert reports (Docket No. 48). The court has ordered a response to this motion to be filed by December 11, 2009. (Docket No. 50.) Also, in previous Orders, the court stayed all discovery as to defendant Coffman and his business partner, Jay Davis, and further directed the parties to update the status of the criminal investigation in Kentucky against defendant Coffman by December 15, 2009, in the expectation that, by that time, the parties could provide additional insight into the personal jurisdiction and venue issues that the court was not in the position to conclusively resolve at the time of those Orders. (Docket Nos. 26, 29, 36.)

1

*Trust, et al., v. Mid-America Energy, Inc., et al.*, No. 3:07-cv-421.  In *Waldemar*, investors sued Mid-America Energy, Inc. ("MAE") and Mid-America Oil & Gas, LLC ("MAO&G"), among others, for the fraudulent sale of unregistered securities.  (*See* Case No. 3:07-421, Docket No. 1 at 2.)  The investors alleged that certain private placement memoranda issued by the *Waldemar* defendants contained misrepresentations and material omissions and that the defendants intended to defraud the investors, in violation of federal and Tennessee securities laws, as well as common law.  (*See id.* at 8-10.)  The *Waldemar* investors' complaint was filed on April 16, 2007, and the complaints in the four other related cases were each filed on that date or thereafter.

On September 27, 2007 and June 10, 2008, the court entered default judgments in the *Waldemar* actions totaling $5,720,300, for which MAE, MAO&G, and the other defendants were jointly and severally liable.   On November 26, 2008, on the *Waldemar* plaintiffs' motion, the court appointed Cumberland and Ohio of Texas, Inc. ("C&O") as receiver of the assets of MAE and MAO&G, giving C&O the authority to sue and collect obligations on the companies' behalf, including, primarily, money to pay the outstanding judgments that were entered in this court against MAE and MAO&G in 2007 and 2008.  (*See* Case No. 3:07-421, Docket No. 109 at 3.)

On February 20, 2009, C&O filed this lawsuit against defendant Bryan Coffman and his law firm, Davis & Coffman PLLC, alleging that Coffman and his firm intentionally misused and misdirected more than $5,000,000 that MAE and MAO&G had deposited into escrow accounts that were to be managed by the defendants. (Docket No 1 at 5-6.)  On July 24, 2009, the plaintiff filed an Amended Complaint, asserting the same allegations and adding a claim for contribution in addition to the claims for breach of fiduciary duty, equitable disgorgement,

2

accounting and attorney's fees. (Docket No. 32 at 7.)

On November 10, 2009, after substantial briefing of other issues, the defendants moved to dismiss this matter for lack of subject matter jurisdiction. Specifically, the defendants argue that the plaintiff, as an entity, "ceased to exist" as of February 18, 1998, "when its charter was forfeited for failure to pay taxes owed to the Texas Department of Revenue." (Docket No. 41 at 1.)

The defendants support their argument that the plaintiff has no standing in this case by providing documentation (the authenticity and substance of which is not disputed) from the office of the Tennessee Secretary of State, showing that Tennessee considers C&O to be an active foreign corporation based in Texas and from the Texas Secretary of State showing that C&O "forfeited" its "entity status in Texas" as of February 18, 1998. (Docket No. 41 Exs. 1-3.) These documents also show that C&O has its principal office in Nashville, Tennessee, at the home of its director, James A. Skinner. (Docket No. 41 Exs. 1 and 3.)

## ANALYSIS

The defendants have moved to dismiss this action based on a lack of subject matter jurisdiction, contending that the dissolution of the receiver as a Texas corporation strips C&O of entity status. The plaintiff has responded, arguing that, while mistakes were made in the corporate filing process, it retains entity status and the ability to sue on behalf of the relevant companies (and, indirectly, the shareholders) here.

### I.  Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) governs the dismissal of lawsuits for lack of

3

jurisdiction over the subject matter. The "first and fundamental question presented by every case brought to the federal courts is whether it has jurisdiction to hear a case." *Douglas v. E.G. Baldwin & Assoc., Inc*, 150 F.3d 604, 606-07 (6th Cir. 1998). When challenging a court's subject matter jurisdiction under Rule 12(b)(1), a defendant may either facially attack the plaintiff's complaint by testing the sufficiency of the pleading itself, or the defendant may "factually attack" the complaint, that is, argue that the existence or non-existence of certain facts deprives the court of subject matter jurisdiction. *See Smith v. Northwest Airlines, Inc.*, 141 F. Supp. 2d 936, 939-40 (W.D. Tenn. 2001).

As indicated above, the defendants have launched a "factual attack." Indeed, the defendants argue that, based on the evidence submitted from the relevant secretary of state offices showing that C&O forfeited entity status in Texas and never established domicile in Tennessee, "the record demonstrates that the plaintiff, [C&O], no longer exists. Given the absence of a plaintiff in this proceeding, this action does not present a justiciable case or controversy and should therefore be dismissed under Fed. R. Civ. P. 12(b)(1)." (Docket No. 41 at 4.).

While the defendants recognize that there are limited circumstances in which, under Texas law, a dissolved corporation may still sue, such as when the dissolution occurred within the prior three years or when the dissolved corporation has been "revived," neither of those exceptions apply here, as the forfeiture of corporate status occurred more than eleven years ago and there is nothing in the record to reflect any attempt to revive C&O's corporate status in Texas. (Docket No. 41 at 3, citing Tex. Bus. Corp. Act Ann., Art. 7.12(A)(2); Tex. Tax Code

4

171.312-171.313).

In response, the plaintiff files the declaration of the "controlling principal" of C&O, Mr. Skinner. (Docket No. 43.) Skinner contends that, contrary to the defendants' portrayal of him as a "tax cheat," C&O only inadvertently failed to file a franchise tax return for one year, 1997, when he was winding up his business in Texas, and C&O was current for all other years and currently owes no back taxes. (*Id.* at 2.) Moreover, Skinner claims that he moved from Texas to Tennessee about twenty years ago and, from 1999 until the day he received the defendants' pending motion, he believed that his counsel had properly effectuated a change in corporate domicile for C&O from Texas to Tennessee. (*Id*. at 2.) That said, Skinner and C&O recognize that, in light of the evidence presented by the defendants here, "there is no dispute that C&O's controlling principal, [Skinner], failed properly to effectuate his intention to change C&O's corporate domicile from Texas to Tennessee." (Docket No. 42 at 2.)

The plaintiff contends, however, that this oversight, large as it may be, is not fatal to C&O's ability to prosecute this action for two main reasons. First, the plaintiff contends that, despite the filing errors, "C&O never ceased doing business. It merely continued doing business in a different form. Instead of becoming a Tennessee corporation, C&O was a Tennessee general partnership." (Docket No. 42 at 2)(citing *Powers v. Terry*, 2001 WL 1516958, \*1, 3 (Tenn. Ct. App. Nov. 29, 2001))(finding that a closely held corporation that was "administratively dissolved" by the Tennessee Secretary of State "continued to operate," as a "partnership" held by a husband and wife, until their divorce, when it became a "sole proprietorship"). That is, the plaintiff argues that, because of the record keeping and filing

5

errors, C&O, unwittingly, has been operating as a general partnership, run by Skinner and his wife in Nashville, Tennessee. (Docket No. 42 at 2; Docket No. 43 at 4.)

Second, C&O contends that it is now "taking the administrative steps necessary to document the change in [] domicile," which apparently involves (1) reinstatement of the Texas charter, (2) withdrawal of that charter, and (3) domestication of a corporate charter in Tennessee. (Docket No. 42 at 2). While these changes cannot be effectuated immediately, C&O expects no major administrative hurdles in its effort to achieve corporate domicile in Tennessee, as "[n]o taxes are unpaid, no creditors have been unpaid, and no party has been prejudiced" by the oversight. (*Id.*) To the extent that the court were to find that corporate domicile in Tennessee was a prerequisite to maintaining this suit, however, the plaintiff requests a continuance to allow it to complete the necessary steps. (*Id.* at 3.)

The defendants raise additional issues in reply. First, the defendants argue that Skinner's explanation for his failure to properly domicile C&O as a corporation in Tennessee is not credible because "for each of the immediately preceding 10 years he has personally signed an annual report with the Tennessee Secretary of State that specifically lists Texas as the domicile of [C&O]." (Docket No. 47 at 2.) The defendants attach annual report filings from 2000 through 2009 in which C&O, in forms signed by Skinner, listed Texas as the state of incorporation, although the mailing address of C&O is listed as being in Nashville. (Docket No. 47 Ex. 1.) These documents also reflect that Mr. Skinner is the President of C&O and Harriette Skinner, who resides at the same Nashville address as Mr. Skinner, is the secretary of C&O, and they also comprise the Board of Directors. (*Id.*)

6

As to the general partnership issue, the defendants essentially scoff at the notion that a business could "automatically morph[] into a general partnership" and argue that, either way, "Tennessee follows the internal affairs doctrine, which provides that the internal affairs of a corporation . . . are governed by the law of the state of incorporation," and, as argued in the initial briefing, the plaintiff cannot maintain an action in Texas as a dissolved corporation. (*Id.*)(citing *Roberts v. Fin. Technology*, 2007 WL 3125289, *4 (M.D. Tenn. Oct. 23, 2007)(Trauger, J)). That is, the defendants argue that the plaintiff "may not use an unreported decision [*Powers v. Terry*] from the Tennessee Court of Appeals to trump the statutory law of the State of Texas." (*Id.* at 3.)

Finally, the defendants argue that Mr. Skinner is not allowed to "salvage this action" by forming a new Tennessee corporation in the same name as the plaintiff. (*Id.*) That is, because "[e]ach corporate entity is a distinct legal person," the founding of a new Tennessee corporation in the C&O name would not impact this C&O's ability to bring this case. (*Id.*) Moreover, the defendants argue, "[g]iven his handling of this matter thus far, it is certainly presumptuous of Mr. Skinner to claim that this Court will automatically appoint his new corporation as Receiver to pursue claims against the defendants." (*Id.*)

Ultimately, the plaintiff's position that it should be considered a "general partnership" is persuasive. Under Tennessee law, a contract of partnership need not be formalized in writing and may be "either express or implied." *AmPharm, Inc. v. Eastland Pharmacy Servs., LLC*, 2008 WL 4830803, *4 (Tenn. Ct. App. Nov. 5, 2008)(citing *Bass v. Bass*, 814 S.W.2d 38, 41 (Tenn. 1991)). Indeed, courts examine the intention of the parties to determine whether a

7

partnership has been created, and, for the court to find a partnership to exist, the parties need not even intend to form a partnership, but, rather, they need only intend "to do the things which constitute a partnership," such as associating with another person (or persons) to carry on as co-owners of a for-profit business and placing "money, assets, labor or skill in commerce with the understanding that profits will be shared between them." *Id.* The court should examine all of the relevant surrounding circumstances to determine if a partnership exists, and the burden of proof rests with the party asserting the presence of the partnership arrangement. *Id.*

Clearly then, contrary to the defendants' argument, general partnerships are readily implied in law when another, arguably more concrete, entity status is not indicated. *See Powers,* 2001 WL 1516958, at *3. Here, as of February 18, 1998, C&O was not a corporation, but it was still a going concern, that is, based on the evidence filed with the court, the dissolution of corporate status did not destroy C&O as any sort of entity. Rather, as Mr. Skinner states in his declaration, since that time, "C&O has continuously been engaged in its business of acting as a receiver in various matters including bond-default litigation, bankruptcy proceedings, and similar cases. C&O has two shareholders, myself and my wife. Since 1989 both my wife and I have continuously been citizens of Tennessee. At no time has C&O in fact ceased doing business." (Docket No. 43 at 4.) In light of the undisputed evidence that the Skinners joined together as co-owners of a for-profit business, the court finds that, in the absence of any more formal corporate certification, C&O should be considered a general partnership under Tennessee law.[2]

---

[2] As indicated, the defendants' discussion of Texas corporate law and the internal affairs doctrine is misplaced. As the defendants themselves recognize and argue, C&O ceased to be a Texas corporation in 1998, but it obviously continued to be something, and, the evidence shows,

8

Neither side contends that there is anything about general partnership status that would deprive C&O of the right to operate (and bring this case) as a receiver, and the court has located no law reflecting anything to that effect. Moreover, a review of the record from the underlying *Waldemar* action indicates that C&O's specific status as a business entity was not a carefully considered issue at the time C&O was appointed as the receiver; indeed, the documentation and evidence submitted by the *Waldemar* plaintiffs concerning C&O's qualifications centered on the qualifications of Mr. Skinner, who, among other things, submitted his resume in support of his qualifications to operate as the receiver in this matter. (*See* Case No. 3:07-421, Docket No. 82 at 12; Case No. 3:07-421, Docket No. 84.)

Therefore, the court concludes that C&O may continue to pursue this action, and, if going forward, C&O seeks to become a Tennessee corporation (by reviving Texas corporate status and moving domesticity to Tennessee), the court fails to see how that would adversely impact C&O's ability to operate as a receiver. Indeed, contrary to the defendants' concern regarding each corporate entity being "a distinct legal person," there is no indication that, in this

---

that "something" is a Tennessee general partnership. Moreover, as explained in *Roberts*, the case upon which the defendants rely in support of their internal affairs doctrine argument, under Tennessee's interpretation of the internal affairs doctrine, "matters involving the internal affairs of a foreign corporation are deemed substantive in nature and should be resolved in accordance with the law of the state of incorporation." *Hicks v. Lewis*, 148 S.W.3d 80, 84 (Tenn. Ct. App. 2003)(internal quotation omitted). That is, the internal affairs doctrine applies to corporations that are actually foreign corporations; here, by the defendants' own contention, C&O ceased to be a foreign corporation in 1998, and, therefore, the internal affairs doctrine has no applicability here. The defendants have come forth with no evidence that, for purposes of the internal affairs doctrine, an entity or corporation always "wears the badge" of its original state of incorporation, and such a view strikes the court as problematic, as, under this view, a corporation would be forever tied to the law of the state of its original incorporation, even if the corporation moved its state of incorporation or, as here, assumed a new entity status in another state.

9

transition process, C&O will cease to operate as a viable entity or that the status of Tennessee corporation would be bestowed on any entity other than the C&O that is presently before the court.

None of this is to say that the defendants' attacks on Skinner's credibility and C&O's competency as a receiver are completely misplaced. As indicated above, the defendants have filed documentation indicating that, from 2000 to 2009, C&O's annual report filing with the Tennessee Secretary of State's office (signed by Mr. Skinner) indicated that the "state . . . of incorporation" for C&O was Texas. (Docket No. 47 Ex. 1.) Assuming that Mr. Skinner is being truthful in his current representations to this court that he believed that the corporate domicile had been moved from Texas to Tennessee in 1999 (Docket No. 43 at 2), it is fairly remarkable that, for ten straight years, he submitted a document to the Tennessee Secretary of State that listed the wrong state of incorporation. Moreover, the court is somewhat troubled by the plaintiff's certain representations in both its initial and amended Complaints that C&O was a corporation organized under the laws of Tennessee. (Docket No. 1 at 2; Docket No. 32 at 2.) That being said, for the reasons discussed above, dismissal of this action on the grounds that the plaintiff, in essence, does not exist would be inappropriate. Additionally, if challenges are to be made to C&O's competency as a receiver, they are not persuasively made by these defendants, who obviously have a vested interest in seeing an increased level of confusion and uncertainty on the plaintiff's side in this matter.

10

Case 3:09-cv-00182 Document 51 Filed 12/09/09 Page 10 of 11 PageID #: 793

## CONCLUSION

For the reasons discussed herein, the defendants' Motion to Dismiss for Forfeiture of Receiver's Existence will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

11