IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CUMBERLAND AND OHIO CO. ) | |
| OF TEXAS, as Court-Appointed Receiver ) | |
| of the assets of Mid-America Energy, Inc. ) | |
| and Mid-America Oil & Gas, LLC, *et al.* ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:09-cv-182 |
| ) | Judge Trauger |
| BRYAN S. COFFMAN and ) | |
| DAVIS & COFFMAN, PLLC, ) | |
| ) | |
|     Defendants. ) | |
| ) | |

## MEMORANDUM

Pending before the court is the defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2)(3) and (6) (Docket No. 77). For the reasons discussed herein, the defendants' motion will be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of securities fraud violations that were the subject of several related lawsuits that are now consolidated before this court under *Waldemar E. Albers Revocable Trust, et al., v. Mid-America Energy, Inc., et al.*, No. 3:07-cv-421. In *Waldemar*, investors sued Mid-America Energy, Inc. ("MAE") and Mid-America Oil & Gas, LLC ("MAO&G"), among others, for the fraudulent sale of unregistered securities. (*See* Case No. 3:07-421, Docket No. 1 at 2.) The investors alleged that certain private placement memoranda issued by the *Waldemar* defendants contained misrepresentations and material omissions and that the defendants intended

1

to defraud the investors, in violation of federal and Tennessee securities laws, as well as common law. (*See id.* at 8-10.) The *Waldemar* investors' complaint was filed on April 16, 2007, and the complaints in the four other related cases were each filed on that date or thereafter.

On September 27, 2007 and June 10, 2008, the court entered default judgments in the *Waldemar* actions totaling $5,720,300, for which MAE, MAO&G, and the other defendants were jointly and severally liable. On November 26, 2008, on the *Waldemar* plaintiffs' motion, the court appointed Cumberland and Ohio of Texas, Inc. ("C&O") as receiver of the assets of MAE and MAO&G, giving C&O the authority to sue and collect obligations on the companies' behalf, including, primarily, money to pay the outstanding judgments that were entered in this court against MAE and MAO&G in 2007 and 2008. (*See* Case No. 3:07-421, Docket No. 109 at 3-5.)

On February 20, 2009, C&O filed this lawsuit against defendant Bryan Coffman and his law firm, Davis & Coffman PLLC (the "Firm"), alleging that Coffman and, thereby, the Firm, had intentionally misused and misdirected about $5,000,000 that MAE and MAO&G had deposited into escrow accounts that were to be managed by the defendants. (Docket No 1 at 5-6.) Shortly thereafter, the defendants filed a Motion to Dismiss or Transfer Venue; Or, in the Alternative, Stay the Proceeding.[1] (Docket No. 20.)

---

[1] After the filing of that motion, two Amended Complaints were filed. The first, filed on July 24, 2009, added a claim for contribution under the Tennessee Securities Act, in addition to the claims for breach of fiduciary duty, equitable disgorgement, accounting and attorney's fees originally asserted. (Docket No. 32 at 7.) The second, currently operative, Amended Complaint appears to remove the claim for contribution, leaves the other claims, and adds eleven individual MAE and MAO&G investors as plaintiffs and asserts a Tennessee Securities Act claim on their behalf. (Docket No. 71 at 10.) The defendants have renewed their venue and jurisdiction challenges with the filing of each Amended Complaint. (Docket Nos. 35 and 77.)

2

In that motion, the defendants argued that there was no personal jurisdiction over the defendants in Tennessee, as Coffman is a Kentucky resident, is licensed to practice law in Kentucky and had only "minor contacts" with Tennessee in conjunction with the events giving rise to this litigation. (Docket No. 21 at 8.) The defendants also argued that the alleged wrongdoing occurred in the Firm's offices in Kentucky, and, therefore, venue was also improper in this district. (*Id.* at 9-10.) Alternatively, the defendants requested a stay of the proceedings "pending the resolution of the [related] criminal investigation" that was pending against Coffman in Kentucky. (*Id.* at 17.)

On June 15, 2009, the court granted the motion in part and deferred it in part. (Docket No. 26.) That is, as this "civil action clearly deals with the same issues concerning the defendants that are the subject of a federal criminal investigation in the Eastern District of Kentucky," the court stayed discovery as to the defendants. (Docket No. 1-2.) Additionally, the court stated that, "[b]ecause this case focuses upon alleged violations of fiduciary duties by the defendants in the handling and accounting of escrow funds maintained by the defendants in the Eastern District of Kentucky, a transfer of this action to the Lexington Division of that district seems appropriate." (*Id.* at 2.) In light of the ongoing criminal investigation, the court postponed a final decision on transfer until "a later stage in the litigation." (*Id.*) The court ordered the defendants to file a status report regarding the criminal investigation by December 15, 2009. (*Id.*)

After briefing and motion practice on issues that are not of present concern, the defendants filed their Status Report on December 15, 2009. (Docket No. 55.) In that report, the

3

Case 3:09-cv-00182   Document 80   Filed 05/21/10   Page 3 of 17 PageID #: 1190

defendants stated that Coffman had been indicted on December 4, 2009 in the Eastern District of Kentucky, and they requested an extension of the stay of discovery. (*Id.*) Since that time, the court has ordered that all discovery in this case (not just as to the defendants) be stayed pending resolution of the criminal proceedings, and the court has continued all case management deadlines indefinitely. (Docket Nos. 70 and 73.)

The plaintiffs filed their Second Amended Complaint on February 25, 2010, and, as noted above, this complaint contains a Tennessee Securities Act (TSA) claim asserted by eleven individual investors. (Docket No. 71.) Through the pending motion to dismiss, filed on April 30, 2010, the defendants have renewed their venue and personal jurisdiction objections, and they have also moved to dismiss the TSA claim. (Docket No. 78.)

As to the TSA claim, the Second Amended Complaint alleges that, beginning in 2005, MAE and MAO&G (based in Hendersonville, Tennessee and Portland, Tennessee) improperly solicited and sold, as unregistered securities, "limited liability partnership units in oil and gas development well projects" to investors in numerous states. (Docket No. 71 at 8-9.) The plaintiffs now allege that the defendants "materially aided and assisted" MAE and MAO&G in this effort by, among other things, (1) handling investor money, (2) preparing private placement memoranda for the offer and sale of the securities that was materially misleading in several respects, (3) giving advice and operational instructions to MAE and MAO&G concerning the sale of securities and the "conduct of sales agent activities," (4) preparing and filing required documents with state regulators, some of which were materially misleading, and (5) knowingly misrepresenting to investors that MAO&G was in good regulatory standing in Texas. (Docket

4

No. 71 at 5-11.)

## ANALYSIS

I.  **Personal Jurisdiction**

    A.  **Legal Standard**

A court deciding a motion to dismiss for lack of personal jurisdiction has three options. It may (1) rule on the motion on the basis of the affidavits submitted by the parties, (2) permit discovery in aid of the motion, or (3) conduct an evidentiary hearing on the merits of the motion. *See Dean v. Motel 6 Operating LP*, 134 F.3d 1269, 1272 (6th Cir. 1998). Here, some material, largely in the form of deposition testimony from the *Waldemar* case, has been filed in support of the plaintiffs' jurisdictional arguments (*See e.g.* Docket No. 39 Ex. 1), but no evidentiary hearing has been conducted. Generally, where discovery in aid of jurisdiction has been conducted, if there remains a genuine dispute about the jurisdictional facts, the party asserting jurisdiction need only make a *prima facie* showing of jurisdiction to defeat the motion. *Id.* If there is no "real dispute" about the facts, the party asserting jurisdiction must show jurisdiction by a "preponderance of the evidence." *Id.*[2]

As both parties recognize, the issue of whether this court may exercise personal jurisdiction over the defendants depends on the specific limitations of Tennessee's long-arm statute and the constitutional principles of due process. *Thomson v. Toyota Motor Corp.*, 545 F.3d 357, 361 (6th Cir. 2008). Tennessee's long-arm statute has been consistently construed to

---

[2] It is not necessary to evaluate, under the unique circumstances of this case, which standard to apply. As discussed herein, the court concludes that, under either standard, this court clearly has personal jurisdiction over the defendants.

5

extend to the limits of federal due process, and, therefore, the two inquiries are merged, and the court need only determine whether exercising personal jurisdiction over these defendants is consistent with federal due process requirements. *Bridgeport Music, Inc. v. Still N The Water Publishing*, 327 F.3d 472, 477 (6th Cir. 2003).

In order for due process to permit the exercise of personal jurisdiction over a non-resident defendant, the defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Youn v. Track, Inc.*, 324 F.3d 409, 417-18 (6th Cir. 2003)(quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Supreme Court has identified "general" jurisdiction and "specific" jurisdiction as distinct bases for personal jurisdiction. A demonstration of the contacts necessary for either basis is sufficient to establish personal jurisdiction. *Id.*

Specific jurisdiction exists when a state exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum. *Id.* General jurisdiction, on the other hand, exists when a defendant's contacts with the forum are "substantial" and "continuous and systematic." *Id.* When personal jurisdiction is based upon general jurisdiction, a state may exercise jurisdiction over a defendant, even if the suit does not arise out of the defendant's contacts with the state.[3] *Id.*

In *Southern Machine Co. v. Mohasco Industries, Inc.*, the Sixth Circuit established a three-part test for determining whether the exercise of specific jurisdiction was consistent with

---

[3] Here, there appears to be no dispute that the defendants are not subject to general jurisdiction. (Docket No. 21 at 6; Docket No. 22 at 5.) Therefore, the court focuses its analysis on the specific jurisdiction issue.

6

the principles of due process. "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." 401 F.2d 374, 381 (6th Cir. 1968). While a motion to dismiss for lack of specific personal jurisdiction may be maintained based on prongs two and three of the *Mohasco* test, purposeful availment is the *sine qua non*, or absolutely indispensable, element of personal jurisdiction, and, therefore, disputes about whether or not there is specific personal jurisdiction in a given case often rise or fall on the issue of purposeful availment. *See Air Products and Controls, Inc. v. Safetech International, Inc.*, 503 F.3d 544, 550-51 (6th Cir. 2007).

**B.    Application**

In support of their personal jurisdiction argument, the defendants argue that the Firm was located in Kentucky, Coffman was based in and licensed in Kentucky, and the bank accounts and records at issue were all held in Kentucky. (Docket No. 21 at 1-2.) While the defendants recognize that they represented Tennessee companies MAE and MAO&G for four years, they claim that "the overwhelming majority of the Firm's contact" with MAE and MAO&G occurred in Kentucky, largely because that is where the defendants were based and because Coffman's primary contact at MAE and MAO&G (Gary Milby) maintained a residence in Kentucky (as well as in Tennessee) during the course of the Firm's representation. (*Id.* at 2, 8.)

Coffman concedes that he "traveled to Tennessee on five occasions in connection with

7

the Firm's representation" of MAE and MAO&G but maintains that these meetings did not focus on the disposition of the escrow funds. (*Id.* at 2-3; Docket No. 21 Ex. 1 at 2.) The defendants argue that the "incidental contact" with Tennessee brought about by having a client who resides there does not demonstrate "purposeful availment" and, because the alleged improper conduct occurred in Kentucky, the claims do not "arise" from the defendants' activities in the forum. (Docket No. 21 at 8-9.) In light of all of this, the defendants argue, a finding of personal jurisdiction over the defendants in Tennessee would be unreasonable. (*Id.* at 9.)

In response, the plaintiffs argue that "purposeful availment" is easily demonstrated by the fact that the defendants represented the Tennessee companies (as general advisor, attorney and escrow agent) for several years and, consistent with that representation, interacted with members of the companies in Tennessee, spoke to members of the companies in Tennessee by phone regularly, and received money, including the escrow checks, from the companies, drawn on Tennessee banks. (Docket No. 22 at 2-3, 6.) In further support of their "purposeful availment" argument, the plaintiffs submit the deposition testimony of John Melton, who worked for the companies for about six months during the relevant time period. Melton testified that he remembered seeing Coffman at MAE and MAO&G two or three times, and he specifically recalled a conversation with Coffman, in Tennessee, about the legalities of the work that Melton was being asked to do for the companies. (Docket No. 39 Ex. 1 at 34-35.)

The plaintiffs argue that the remaining two elements of the *Mohasco* test are easily satisfied as well. That is, the claims here "arise" from Coffman's activities in the forum state because Coffman was "intimately and directly involved in the daily business activities of MAE

8

and MAO&G." (Docket No. 22 at 7.) The plaintiffs support this point with deposition testimony of MAE and MAO&G employees Zelicia Cutrer and Melissa Chapman in the *Waldemar* case, who testified to Coffman's deep level of involvement with the day-to-day affairs of the companies and to several interactions they had with Coffman on the phone (and, less regularly, in Tennessee), in which Coffman directed them as to specific accounting and financial issues. (Docket No. 22 Ex. 1 at 89-90, 93-94; Docket No. 22 Ex. 2 at 18, 102-103.)

Finally, the plaintiffs argue that it is entirely reasonable for Coffman to be subject to personal jurisdiction in Tennessee because "Tennessee has a local interest in protecting its citizens from individuals who either facilitate the commission of crimes or breach their fiduciary duties within its borders." (Docket No. 22 at 8.)

Analysis under *Mohasco* shows that there is personal jurisdiction over the defendants here. First, "purposeful availment" is "something akin to a deliberate undertaking," that is, a deliberate effort by the defendant to direct its activities toward, and to make contact with, the forum. *Bridgeport Music*, 327 F.3d at 478 (internal quotation omitted). Purposeful availment exists "when the defendant's contacts with the forum state proximately result from actions by the defendant *himself* that create a substantial connection with the forum state, and when the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *Id.* (internal quotation omitted).

The record plainly demonstrates that Coffman and his Firm knowingly undertook the representation of a Tennessee client and maintained that relationship for several years. The deposition testimony indicates that, at least, it was not out of the ordinary for Coffman to be seen

9

at the companies' Tennessee locations, that it was common for Coffman to interact with employees in Tennessee by phone, and that Coffman was deeply involved in the day-to-day affairs of the companies. This "reaching out" to the forum on a repeated and prolonged basis is precisely the type of "deliberate undertaking" that demonstrates purposeful availment, and, given the nature of the contacts, it would be entirely reasonable for the defendants to "anticipate being haled into court" in Tennessee.

The "arises from" element of the *Mohasco* test is met as well. A cause of action "arises from" the defendant's contacts with the forum state when the cause of action has a "substantial connection" to the defendant's forum state activities, that is, "where a defendant's contacts with the forum state are related to the operative facts of the controversy." *Tharo Systems, Inc. v. Cab Produkttechnik GMBH & Co.*, 196 Fed. Appx. 366, 371 (6th Cir. 2006)(internal quotations omitted). The defendants' contacts with the forum all relate to their work on behalf of the companies and their management of the companies' funds; clearly, these contacts are substantially connected with and related to the "operative facts" of this controversy, which concern representations made by Coffman on behalf of the companies and actions taken by Coffman with regard to those funds. In light of this, the "arises from" prong of the *Mohasco* test is easily met.

Finally, on the "reasonableness" element, unless it is an "unusual case," if the first two prongs of *Mohasco* are met, the reasonableness prong should be presumed satisfied, and the "specific assertion of personal jurisdiction [is] proper." *Tharo*, 196 Fed. Appx. at 372 (internal quotation omitted). Here, there is nothing to indicate (and the defendants suggest nothing) that

10

this is an unusual case where, despite the established contacts, it is still unreasonable to exercise personal jurisdiction over the defendants, either because of the burden on the defendants or because of some other remarkable issue of convenience and judicial economy. *See id.* The third factor of the test is satisfied, and, therefore, the plaintiffs have met their burden with regard to establishing personal jurisdiction. The defendants' Motion to Dismiss under Rule 12(b)(2) will be denied.

## II.     Venue

In support of the notion that venue is proper in this district, the plaintiffs rely on 28 U.S.C. § 1391(a)(2), which states that a diversity action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2). This section does not require the court to determine where the most substantial events giving rise to the claim occurred; rather "venue is proper in any district where substantial activities took place." *Gomberg v. Shosid*, 2006 WL 1881229, *9-10 (E.D. Tenn. July 6, 2006)(citing *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 263-64 (6th Cir. 1998)). Therefore, for purposes of Section 1391(a)(2), the plaintiff is free to file his action in any district with a "substantial connection" to his claims. *Bramlet*, 141 F.3d at 263.

The burden of establishing venue falls on the plaintiffs, and, as here, on a Motion to Dismiss for improper venue, the court may examine facts outside of the complaint but "must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." *Gone to the Beach, LLC v. Choicepoint Serv.*, 434 F. Supp.2d 534, 536-37 (W.D. Tenn. 2006). If the court finds that venue is improper, it has discretion, under 28 U.S.C. § 1406, to dismiss the case

11

pursuant to Fed. R. Civ. P. 12(b)(3) or transfer the case to a district where venue is proper. *Bramlet*, 141 F.3d at 262.

In briefing, the defendants' argument in support of dismissal or transfer for improper venue is short, essentially re-asserting that there is not jurisdiction over the defendants in Tennessee and that, under the complaint allegations, the "alleged wrong-doing would have occurred in Lexington," Kentucky, where the accounts were located and handled. (Docket No. 21 at 9; Docket No. 25 at 4.) In response, the plaintiffs argue that "a substantial part of the events giving rise to the claim" occurred in this district, including, as discussed above, Coffman's numerous interactions with employees of MAE and MAO&G, who were located at the companies' headquarters in Hendersonville, Tennessee and Portland, Tennessee, that is, within this judicial district. (Docket No. 22 at 2, 9.)

The court finds that there is a "substantial connection" between this district and the claims asserted in this case. Again, the record indicates that Coffman repeatedly came to this district to provide services on behalf of MAE and MAO&G and directed the activities of employees of the companies who were located in this district and that the escrow checks were drawn on banks located in this district. While, as the defendants point out, this case certainly could have been brought in the Eastern District of Kentucky, the task of the court here is not to find the district with the most substantial ties to the case but it is, rather, to evaluate whether the chosen district has a "substantial connection" to the case. Given the presence of MAE and MAO&G in this district and the defendants' close and prolonged association with those companies, there is a "substantial connection" between the claims in this case and this district.

12

Therefore, the defendants' Motion to Dismiss under Rule 12(b)(3) for improper venue will be denied.

As noted above, in the court's June 15, 2009 Order that deferred ruling on the personal jurisdiction and venue objections, the court stated that, "[b]ecause this case focuses upon alleged violations of fiduciary duties by the defendants in the handling and accounting of escrow funds maintained by the defendants in the Eastern District of Kentucky, a transfer of this action to the Lexington Division of that district seems appropriate." (Docket No. 26 at 2.) While the defendants have suggested that transfer is an option, should the court find that there is improper venue here, the parties have not fully briefed the merits of an "interests of justice" transfer under 28 U.S.C. § 1404(a). In light of this, the court will not consider whether to transfer this action under Section 1404 at this time. To the extent the defendants wish to raise this issue, they should do so *after* the resolution of the criminal proceedings in Kentucky.

### III. Motion to Dismiss for Failure to State a Claim

As discussed above, the defendants have also moved, under Fed. R. Civ. P. 12(b)(6), to dismiss the TSA claim asserted by the individual investor plaintiffs in the Second Amended Complaint. (Docket No. 78 at 2.)

#### A. Standard of Review

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The

13

Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949-50 (2009).

**B. Analysis**

In the Second Amended Complaint, the plaintiffs refer to the defendants as "agents" of MAE and MAO&G "who materially aided" the companies "in their violations of the Tennessee Securities Act." (Docket No. 71 at 4.) As discussed above, this alleged material aid consisted of a wide variety of activities, including drafting fraudulent documents for investors and regulators, handling and secreting investor money, directing MAE and MAO&G employees, and making misrepresentations to investors. (Docket No. 71 at 5-11.)

The plaintiffs allege that the defendants' conduct implicates four provisions of the TSA:

14

T.C.A. § 48-2-104(a), which makes it unlawful to sell unregistered securities (absent exemption); T.C.A. § 48-2-121, which sanctions fraudulent statements, schemes, actions, or omissions in connection with the offer, sale, or purchase of securities; T.C.A. § 48-2-122(a), which imposes liability upon individuals who sell a security in violation of Section 104(a) or Section 121; and T.C.A. § 48-2-122(g), which imposes liability on various individuals and "agents" who "materially aid" or control an individual who is liable under the TSA. (Docket No. 71 at 10-11.)

In moving to dismiss, the defendants focus exclusively on Section 122(g), arguing that the "Tennessee Securities Act does not impose liability on a lawyer simply drafting documents" and, therefore, the plaintiffs have failed to state a claim under the Act. (Docket No. 78 at 2.) While the defendants recognize that T.C.A..§ 48-2-122(g) imposes liability on "agents," they argue that the statutory definition of "agent" for purposes of the TSA does not include the defendants within its purview, as it defines an "agent" as "any individual other than a broker-dealer, who represents a broker-dealer in effecting or attempting to effect purchases or sales of securities from, in or into this state." (Docket No. 78 at 4 quoting T.C.A. § 48-2-102(3)). Because, the defendants argue, the Second Amended Complaint alleges that Coffman merely drafted documents and did not effect or attempt to effect purchases or sales of securities, the plaintiffs have failed to state a claim that the defendants acted as "agents" under the TSA.[4]

---

[4] Maintaining that no Tennessee court has reached the issue, the defendants claim that other courts have declined to impose securities act liability on lawyers who merely draft documents and provide legal advice. (Docket No. 78 at 5)(citing *In re Infocure Sec. Litig.*, 210 F. Supp.2d 1331, 1364 (N.D. Ga. 2002); *Ackerman v. Schwartz*, 733 F. Supp. 1231, 1252 (N.D. Ind. 1989); *Baker, Watts & Co. v. Miles & Stockbridge*, 620 A.2d 356, 368 (Md. Ct. App. 1993);

15

(Docket No. 78 at 5.)

The defendants' argument that the TSA claims should be dismissed is not persuasive. First, as the plaintiffs point out, the defendants ignore the plaintiffs' TSA claims premised on liability under sections other than 122(g).[5] (Docket No. 79 at 4.) As to the Section 122(g) claim, in focusing on the definition of "agent," the defendants ignore the scope of that provision. Specifically, Section 122(g) states that:

> "[e]very person who directly or indirectly controls a person liable under this section, every partner, principal executive officer, or director of such person, *every person occupying a similar status or performing similar functions*, every employee of such person who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person . . . [absent affirmative defenses not pertinent here.]" T.C.A..§ 48-2-122(g)(emphasis added).

Given the breadth of this section, at least one case in this district has held that, where the plaintiff has alleged that the "defendants were generally involved" in the business at issue and "had the power to control the transactions in which the securities fraud occurred," the plaintiff

---

*Rendler v. Markos*, 453 N.W.2d 202, 207 (Wis. Ct. App. 1990). These cases are not particularly compelling. While they generally stand for the proposition that a lawyer does not incur securities act liability by simply providing legal advice, here, the plaintiffs have alleged that Coffman, while also a lawyer, was an active participant in the scheme. Moreover, all but the *Rendler* case were resolved on summary judgment after a record had been developed that established the lawyer's role, and, in *Rendler*, it was clear from the face of the complaint that the attorney's role had not gone beyond that of legal counsel.

[5]The plaintiffs contend that, "within the four corners of the Complaint," are sufficient allegations to conclude that Coffman was not necessarily only something akin to an "agent" but was a "primary and indispensable participant in multiple instances of securities fraud." (*Id.*at 9-10.) Even if the defendants had directly challenged their potential liability under these other sections, based upon the allegations discussed above that Coffman was deeply interconnected with the affairs of the companies, the court would be inclined to conclude that plaintiffs' claims under these sections are not "facially implausible."

16

has sufficiently stated a claim under Section 122(g). *Colbert & Winstead, PC 401K Plan v. AIG Fin. Advisors, Inc.*, 2008 WL 2704367, *7-8 (M.D. Tenn. July 8, 2008)(Echols, J). As discussed above, the plaintiffs have alleged that Coffman was, as the plaintiffs now put it, a well-connected "bag man" in the scheme, who also drafted the relevant documents, communicated with investors, diverted funds, and instructed employees how to carry out their jobs. (Docket No. 79 at 6.) Clearly, the plaintiffs have not alleged that Coffman was a mere "scrivener," but they have alleged that he was a well-placed advisor who stood to gain financially from the alleged fraud. These allegations indicate clear "general involvement" and "control" as to the alleged securities fraud and, therefore, the defendants' Rule 12(b)(6) Motion will be denied.

## CONCLUSION

For the reasons expressed herein, the defendants' Motion to Dismiss will be denied. All discovery remains stayed and all deadlines continued indefinitely, pending the resolution of the criminal proceedings against Coffman in Kentucky.

_____
ALETA A. TRAUGER
United States District Judge