IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CUMBERLAND AND OHIO CO. ) <br> OF TEXAS, as Court-Appointed Receiver ) <br> of the assets of Mid-America Energy, Inc. ) <br> and Mid-America Oil & Gas, LLC, et al., ) <br> ) <br>     Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> BRYAN S. COFFMAN and ) <br> DAVIS & COFFMAN, PLLC, ) <br> ) <br>     Defendants. ) <br> ) | Case No. 3:09-cv-0182 <br> Judge Trauger |

**MEMORANDUM**

Pending before the court is the defendants' Motion for Summary Judgment (Docket No. 99), to which the plaintiffs have responded (Docket No. 113), and the defendants have filed a reply (Docket No. 117). For the reasons discussed herein, the defendants' motion will be denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.   Introduction and Procedural History**

This case arises out of securities fraud violations that were the subject of several related lawsuits, the lead case being *Waldemar E. Albers Revocable Trust v. Mid-America Energy, Inc.*, No. 3:07-cv-0421 ("the *Waldemar* litigation"), assigned to Judge Sharp of this court. In the *Waldemar* litigation, investors sued Mid-America Energy, Inc. ("MAE"), Mid-America Oil & Gas, LLC ("MAO&G"), Gary Milby, and a host of limited liability partnerships for the fraudulent sale of unregistered securities. (*See* Case No. 3:07-cv-0421, Docket No. 1 at 2.) The

1

investors alleged, among other things, that certain private placement memoranda issued by the *Waldemar* defendants describing the investment opportunity contained material misrepresentations and omissions and that the defendants intended to defraud the investors, in violation of federal and Tennessee securities laws, as well as common law. (*See id.* at 8-10.) The *Waldemar* investors' complaint was filed on April 16, 2007, and the complaints in the four other related cases were each filed on that date or thereafter.

The securities at issue in the *Waldemar* litigation were described in the private placement memoranda as subscription units in a variety of limited liability partnerships ("LLPs") organized to drill, complete, and operate certain oil wells in Adair County, Kentucky.[1] (*See* Case No. 3:07-cv-0421, Docket No. 1, Ex. 1 at 1.) The private placement memoranda identified MAE as the managing partner of each of the LLP's. (*See id.*) The memoranda also identified MAO&G as the Contractor for each LLP, responsible for drilling the wells and determining whether each well should be completed and equipped. (*See id.* at 18.) Gary Milby controlled both MAE and MAO&G.

On September 27, 2007 and June 10, 2008, the court entered default judgments in the *Waldemar* actions totaling $5,720,300, for which MAE, MAO&G, and the other defendants were jointly and severally liable. (Docket No. 71, Ex. 1 at 2.) On November 26, 2008, on the *Waldemar* plaintiffs' motion, the court appointed Cumberland and Ohio of Texas, Inc. ("C&O")

---

[1] The *Waldemar* plaintiffs alleged that, while some of these entities purported to be LLPs organized under Tennessee law, the Tennessee Secretary of State lacked any records reflecting that fact. (*See* Case No. 3:07-cv-0419, Docket No. 1 at 2-3; Case No. 3:07-cv-0420, Docket No. 1 at 2-3; Case No. 3:07-cv-0421, Docket No. 1 at 4; Case No. 3:07-cv-0422, Docket No. 1 at 3; Case No. 3:07-cv-0876, Docket No. 1 at 3.)

as receiver of the assets of MAE and MAO&G, giving C&O the authority to sue and collect obligations on the companies' behalf, including, primarily, money to pay the outstanding judgments that were entered in this court against MAE and MAO&G in 2007 and 2008. (Docket No. 171, Ex. 1 at 3-5.)

On February 20, 2009, C&O filed this lawsuit against defendant Bryan Coffman and his law firm, Davis & Coffman PLLC (the "Firm"), alleging that Coffman and, thereby, the Firm, had intentionally misused and misdirected $5,062,500 that MAE, MAO&G, and investors had deposited into escrow accounts that were to be managed by the defendants.[2] (Docket No. 1 at 5-6.) C&O seeks recovery of these entrusted funds. Shortly after C&O filed this action, the court stayed discovery as to the defendants, in light of a pending criminal investigation of Coffman in the Eastern District of Kentucky involving the same issues underlying the instant action.[3]

---

[2] The Second Amended Complaint specifically alleges that the investors entrusted $220,500 of the $5,062,500 sum to Coffman. (Docket No. 71 at 6.)

[3] In staying discovery against the defendants, the court granted in part and deferred in part the defendants' Motion to Dismiss or Transfer Venue; Or, in the Alternative, Stay the Proceeding. (Docket No. 20.) In that motion, the defendants argued that there was no personal jurisdiction over the defendants in Tennessee, as Coffman is a Kentucky resident, is licensed to practice law in Kentucky, and had only "minor contacts" with Tennessee in conjunction with the events giving rise to this litigation. (Docket No. 21 at 8.) The defendants also argued that the alleged wrongdoing occurred in the Firm's offices in Kentucky, and, therefore, venue was also improper in this district. (*Id.* at 9-10.)
In its Order, the court noted that, "[b]ecause this case focuses upon alleged violations of fiduciary duties by the defendants in the handling and accounting of escrow funds maintained by the defendants in the Eastern District of Kentucky, a transfer of this action to the Lexington Division of that district seems appropriate." (Docket No. 26 at 2.) Nonetheless, in light of the ongoing criminal investigation, the court postponed a final decision on transfer until "a later stage in this litigation." (*Id.*)

(Docket No. 26 at 1-2.) The court further ordered the defendants to file a status report regarding the criminal investigation by December 15, 2009. (*Id.* at 2.)

The defendants filed their Status Report on December 15, 2009[4] (Docket No. 55), stating that Coffman was indicted on December 4, 2009 in the Eastern District of Kentucky and accordingly requesting an extension of the stay of discovery. (*Id.*) Following the submission of the defendants' Status Report, the court ordered that all discovery in this case (not just as to the defendants) be stayed pending resolution of the criminal charges against Coffman. (Docket No. 70.) It also continued all case management deadlines indefinitely and ordered the parties to convene for a conference pursuant to Federal Rule of Civil Procedure 16 to establish new deadlines within 60 days of the resolution of the criminal charges. (Docket No. 73.)

On February 25, 2010, a Second Amended Complaint was filed, adding eleven individual MAE and MAO&G investors from the *Waldemar* litigation as plaintiffs to this lawsuit ("the investor plaintiffs"),[5] and asserting a Tennessee Securities Act ("TSA") claim on their behalf.[6] (Docket No. 71 at 10.) As to this claim, the Second Amended Complaint alleges that, beginning in 2005, MAE and MAO&G improperly solicited and sold, as unregistered securities, "limited

---

[4] Prior to the filing of that report, C&O filed its First Amended Verified Complaint on July 24, 2009, which added a claim for contribution under the Tennessee Securities Act ("TSA"), in addition to the claims for breach of fiduciary duty, equitable disgorgement, accounting, and attorney's fees originally asserted. (Docket No. 32 at 7.)

[5] Two of the investor plaintiffs, Richard Weber and Charles Greene, were involved in the *Waldemar* litigation by virtue of their association with two entities that were plaintiffs therein, the Weber Family Trust and CG Investments, LLC. (*See* Docket No. 104 at 6; Docket No. 110 at 15.)

[6] The Second Amended Complaint also appears to remove C&O's claim for contribution previously asserted in the First Amended Verified Complaint. (*See* Docket No. 71 at 10-14.)

4

liability partnership units in oil and gas development well projects" to investors in numerous states. (*Id.* at 8-9.) The plaintiffs allege that the defendants "materially aided and assisted" MAE and MAO&G in this effort. (*Id.*) They also allege that the defendants "materially participated in a scheme to defraud investors by," among other things, drafting materially misleading private placement memoranda that: (1) falsely represented that the securities were exempt from registration; (2) falsely omitted information concerning the history of adverse actions taken against Gary Milby by securities regulators; and (3) falsely stated that investor funds would be used for the investors' benefit when, in fact, those funds were diverted to Milby, Coffman, and members of their respective families, among others, for personal use. (*Id.* at 11.) The Second Amended Complaint further alleges that the defendants drafted and filed materially misleading documents with state regulators claiming that no commissions were paid to salespersons working on behalf of MAE and MAO&G.[7] (*Id.*)

On March 7, 2012, the court issued an Order directing the Clerk to administratively close this case. (Docket No. 84.) The Order further stated that the case would be reopened upon a proper motion following the disposition of criminal charges against Coffman. (*Id.*) Shortly thereafter, both parties filed a joint motion requesting that the court reopen this case and schedule a case management conference to set new deadlines. (Docket No. 85 at 2.) The parties advised the court that the criminal action against Coffman in the Eastern District of Kentucky

---

[7] Following the filing of the Second Amended Complaint, the court issued a Memorandum Opinion (Docket No. 80) denying the defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2)[,](3) and (6) (Docket No. 77), through which the defendants renewed their venue and personal jurisdiction objections and also sought dismissal of the plaintiffs' TSA claim.

5

had concluded. (*Id.* at 2.) Indeed, after being convicted of assorted counts of mail fraud, wire fraud, conspiracy to commit money laundering, money laundering, and securities fraud, Coffman was sentenced to a total term of 300 months imprisonment and ordered to pay a sum of $36,464,060.86 in restitution. (Docket No. 99, Ex. 14 at 1-3, 6.) Of that total amount, $2,192,746.78 was to be paid to the individual investors in the present case. (Docket No. 114 at 5.) Following the parties' joint motion, the court reopened the case (Docket No. 86) and lifted the stay of discovery (Docket No. 92).[8] The defendants filed the pending motion for summary judgment on July 25, 2012.[9] (Docket No. 99.)

## II.     The Parties' Contentions

In their motion, the defendants seek dismissal of all of the plaintiffs' claims in the Second Amended Complaint. (Docket No. 99.) They argue that the TSA claim of the individual investors filed on February 25, 2010 should be dismissed because it is untimely under the applicable two-year limitations period. (Docket No. 101 at 2.) They also contend that C&O's claims should be dismissed because it lacks the authority to recover the funds entrusted to Coffman. (*Id.*)

At the heart of the defendants' statute of limitations argument is the issue of when the investor plaintiffs possessed knowledge of a potential claim against Coffman and the Firm. It is

---

[8] In its Order lifting the stay of discovery, the court set a deadline for the parties to make initial disclosures. (Docket No. 92.) The court declined to set any additional deadlines and instead scheduled a case management conference that was to be held on July 30, 2012. (*Id.*)

[9] Following the filing of the pending motion, the court issued an Order continuing the previously scheduled case management conference. (Docket No. 112.) The court added that it would reset the conference, if appropriate, following disposition of the defendants' motion. (*Id.*)

undisputed that Coffman was the individual responsible for drafting the private placement memoranda that underlie the investor plaintiffs' TSA claim. What is less settled, however, is when these plaintiffs possessed actual or constructive knowledge of that fact. The defendants contend that the plaintiffs were on inquiry notice of a potential TSA claim against Coffman and the Firm on April 16, 2007, when they brought federal and state law securities claims in the *Waldemar* litigation against MAE, MAO&G, Milby, and the assorted LLPs based on misrepresentations and omissions contained in the private placement memoranda. (Docket No. 101 at 2.) They alternatively assert that the investor plaintiffs possessed actual knowledge of their TSA claim against Coffman no later than December 10, 2006. (Docket No. 101 at 14.) They base this assertion on testimony during Coffman's criminal trial given by Shiping Chen, a plaintiff in the *Waldemar* litigation.[10] (*Id.* at 14-15.) Specifically, Chen testified that, on approximately December 10, 2006, he informed Wynne James, the *Waldemar* plaintiffs' counsel at the time,[11] about a prior conversation he had with Coffman before investing in the LLPs and suggested that James sue him. (Docket No. 99, Ex. 10 at 157-58.) During a later deposition taken in this case, Chen testified that Coffman told him in the aforementioned conversation that Milby was a successful oil man who had made a large sum of money for prior investors and led Chen to believe that the investment presented no risks, while omitting the fact that Milby had previously filed for bankruptcy.[12] (Docket No. 116, Ex.1 at 13, 22-23.)

---

[10] Chen is not a plaintiff in this action.

[11] James also previously served as counsel to the plaintiffs in this suit.

[12] Chen believed that Coffman, by virtue of being an attorney, must have known at the time about Milby's prior bankruptcy. (Docket No. 116, Ex. 1 at 23.)

7

The investor plaintiffs counter that the documents they had in their possession at the time they commenced the *Waldemar* litigation failed to give them a basis upon which to investigate possible claims against Coffman and the Firm. (Docket No. 113 at 8-9.) They also contend that James did not possess actual knowledge of a claim against the defendants on December 10, 2006. (*Id.* at 10.) Specifically, they cite to James' sworn declaration, which among other things, states that: (1) the plaintiffs did not conclude that there were grounds upon which to sue Coffman and the Firm for their participation in the alleged fraudulent scheme until June or July of 2008, when they received and analyzed subpoenaed bank records showing that Coffman misused and diverted large sums of money received from MAE as a purported escrow agent for the company and the LLPs during the same time that individuals had invested money in the various partnerships; and (2) in the course of his communications with the *Waldemar* plaintiffs, no individual who suggested suing Coffman possessed any facts upon which to base a claim against him at that time. (Docket No. 115, Ex. 1 at 3-4.) The investor plaintiffs also cite to Chen's deposition testimony from this case, wherein he stated that his suggestion for James to sue Coffman was based on a gut feeling, rather than any evidence he possessed at the time. (Docket No. 116, Ex. 1 at 33-35.)

In challenging C&O's authority, as the court-appointed receiver, to recover the funds entrusted to Coffman, the defendants rely upon the deposition testimony of James Skinner, a C&O principal. (Docket No. 101 at 15-16.) Specifically, Skinner testified that the funds entrusted to Coffman belonged to the individual LLPs. (Docket No. 111 at 35-36, 43.) Thus, because the court's November 26, 2008 Order in the *Waldemar* litigation appointing C&O as the receiver only empowered C&O to recover the assets of MAE and MAO&G, the defendants

8

assert that C&O lacks authority to recover the entrusted funds, since they constitute assets of the various LLPs. (Docket No. 101 at 15-16.)

While C&O admits that Skinner offered the aforementioned testimony, it denies that such testimony establishes as a legal matter that the funds entrusted to Coffman constituted assets of the LLPs. (Docket No. 114 at 6.) In addition, C&O argues that the defendants' argument ignores relevant aspects of the Court's November 26, 2008 Order. (Docket No. 113 at 14.) For instance, it notes that the Order specified that:

> The Receiver appointed hereunder shall post a bond, and the purpose of the receivership is to take possession of, collect, maintain, preserve and keep safe all the property and assets, both tangible and intangible, real and personal, of MAE and [MAO&G], including all general partnership interests in the Issuer partnerships and all choses in action (the "Assets').

(Docket No. 71, Ex. 1 at 4.) The Order also provided that:

> Upon entry of this Order, the Receiver is hereby directed and empowered to take from MAE and [MAO&G], their principals, agents, employees, representatives and all of their affiliates and subsidiaries who now have or may in the future have any interest in the Assets, immediate possession of the Assets, wherever located: (a) to exclude MAE and [MAO&G], and their respective principals, agents, employees, representatives, affiliates, and subsidiaries, from possessing the Assets, except as expressly provided for in this Order . . . .

(*Id.* at 4-5.) C&O thus argues that it possesses authority to recover the funds from the LLPs because MAE and the LLPs are affiliates of one another. (Docket No. 113 at 114.)

## ANALYSIS

**I.     Standard of Review**

9

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249, 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## II. The Defendants' Motion

### A. The Investor Plaintiffs' TSA Claim

The Tennessee Securities Act provides, in pertinent part, that "[n]o action shall be maintained under this section unless commenced before the expiration of . . . two (2) years after the discovery of the facts constituting the violation, or after such discovery should have been

10

made by the exercise of reasonable diligence." Tenn. Code Ann. § 48-1-122(h) (2012).[13] This statute thus incorporates the discovery rule, which provides that the statute of limitations begins to run not only when the plaintiff possesses actual knowledge of a claim, but also when the plaintiff possesses actual knowledge of "facts sufficient to put a reasonable person on notice that he [or she] has suffered an injury as a result of wrongful conduct." *Redwing v. Catholic Bishop for the Diocese of Memphis*, 363 S.W.3d 436, 459 (Tenn. 2012) (internal quotation marks and citations omitted). Thus, the discovery rule attaches to situations where a plaintiff possesses either actual or constructive knowledge (or inquiry notice) of a claim. In their motion, the defendants assert that the investor plaintiffs' TSA claim must be dismissed because they failed to timely bring their claim under both the actual knowledge and inquiry notice prongs of the discovery rule. For their part, the investor plaintiffs assert that their TSA claim was timely filed.

### 1) Inquiry Notice

The defendants argue that the investor plaintiffs possessed inquiry notice of a potential claim against Coffman and the Firm when they commenced the *Waldemar* litigation on April 16, 2007. Therefore, because the investor plaintiffs failed to commence their action against Coffman and the Firm until February 25, 2010, the defendants contend that their TSA claim is barred under the two-year statute of limitations contained in Tenn. Code Ann. § 48-1-122(h). The crux of the defendants' inquiry notice argument is that because *Waldemar*, like the instant case, involved alleged deficiencies in the private placement memoranda, the investor plaintiffs

---

[13] The Code Commission Notes accompanying the statute indicate that "[f]ormer § 48-2-122 was transferred to § 48-1-122 by the code commission in 2012." (*See* Code Commission Notes to Tenn. Code Ann. § 48-1-122 (2012)).

11

possessed sufficient information at that time to reasonably be on notice of a potential claim against Coffman and the Firm.  (Docket No. 101 at 13.)  In response, the investor plaintiffs assert that the defendants' contention involves a logical leap, as it fails to assert that the plaintiffs were aware of any facts at the time that they commenced the *Waldemar* litigation that would have given them a reason to believe that they possessed a potential claim against the defendants in this case.  (Docket No. 113 at 8-9.)

Relying on *Redwing*, the defendants rightly note that a plaintiff is placed on inquiry notice of a possible claim when that plaintiff possesses actual knowledge of "facts sufficient to put a reasonable person on notice that he [or she] has suffered an injury as a result of wrongful conduct."  363 S.W.3d at 459 (internal quotation marks and citations omitted).  However, in forwarding their argument, the defendants fail to mention that *Redwing* also recognized that the discovery rule not only includes "the discovery of the injury but also the discovery of the *source* of the injury."  *Id.* at 458 (emphasis added).  Thus, the relevant inquiry is whether, on April 16, 2007, the investor plaintiffs were aware of facts sufficient to place a reasonable person on notice that their injuries were caused by Coffman's (and, by extension, the Firm's) actions.

Having reviewed the evidence presented in conjunction with this motion, the court finds that the defendants' inquiry notice argument is without merit.  The defendants rely on the following undisputed evidence in support of their contention that the investor plaintiffs were on inquiry notice of a potential claim against Coffman and the Firm on April 16, 2007: (1) that the investor plaintiffs received a references document from MAE prior to April 16, 2007 to aid them in their due diligence of the company, which listed Coffman as an attorney, accountant, and reference for tax and unspecified compliance issues (Docket No. 114 at 7); and (2) that the

12

investor plaintiffs commenced the *Waldemar* litigation on April 16, 2007, alleging deficiencies in the private placement memoranda that form the basis of the TSA claims brought here. Thus, the defendants argue that, at the time the investor plaintiffs filed the *Waldemar* litigation, they were aware that Coffman was an attorney who was listed as a reference by MAE and that they had suffered an injury as a result of deficient private placement memoranda. (Docket No. 117 at 8-9.) However, these undisputed facts do not, as a matter of law, demonstrate that the investor plaintiffs possessed inquiry notice of a potential claim against Coffman and the Firm on April 16, 2007, as they fail to reasonably link Coffman in any way to those memoranda. Indeed, absent from the defendants' motion is any evidence that should have reasonably placed the investor plaintiffs on notice at the time they commenced the *Waldemar* litigation that Coffman was involved in the preparation of the private placement memoranda containing the alleged misrepresentations and omissions that underlie their TSA claim. For these reasons, the defendants' motion as to this argument will be denied.

13

### 2) Actual Knowledge

The defendants' actual knowledge argument is premised upon the alleged awareness of a potential claim against Coffman and the Firm possessed by the investor plaintiffs' former counsel, Wynne James, in December of 2006. Specifically, the defendants rely upon Shiping Chen's testimony during Coffman's criminal trial wherein he stated that, on approximately December 10, 2006, he informed James of a prior conversation he had with Coffman before making an investment in the LLPs and suggested that James sue him. Based on this testimony, the defendants posit that James possessed actual knowledge of a TSA claim against Coffman on approximately December 10, 2006, and the investor plaintiffs' attempt to file that claim more than three years later is untimely.

However, in their opposition papers, the investor plaintiffs have presented evidence indicating that James lacked any knowledge of a potential claim against the defendants until at least June or July of 2008, when he received and analyzed subpoenaed bank records reflecting that Coffman had misused and diverted funds entrusted to him by MAE as a purported escrow agent. Through his declaration, James has offered sworn testimony that no plaintiff in the *Waldemar* litigation who suggested that he sue Coffman possessed any facts upon which to base a claim against him. To support James' testimony, the investor plaintiffs also offer Chen's testimony from his deposition in this case, wherein he stated that his suggestion in December of 2006 for James to sue Coffman was based on a gut feeling, rather than any evidence he possessed at the time. Accordingly, the plaintiffs contend that their TSA claim was timely filed on February 25, 2010.

14

In their reply brief, the defendants squarely take issue with Chen's deposition testimony that his suspicions concerning Coffman's liability were merely a guess. (Docket No. 117 at 4.) They argue that a fair reading of Chen's deposition and criminal trial testimony show that his suggestion that James sue Coffman was actually based upon Coffman's representations and failures to disclose to Chen before Chen decided to invest in the LLPs. (*Id.* at 4-5.) Indeed, Chen testified at his deposition that Coffman represented that Milby was a successful oil man who had previously made large sums of money for other investors and that the investments at issue involved no risk, while omitting the fact that Milby had previously filed for bankruptcy.[14] However, in advancing this attack on Chen's testimony, the defendants are essentially asking this court to determine the truth of the matters Chen has asserted, which is a task it cannot perform when deciding a motion for summary judgment. *Moldowan*, 578 F.3d at 374; *Anderson*, 477 U.S. at 249 (1986). Leaving aside Chen's testimony, the investor plaintiffs have nonetheless presented evidence showing that James did not have knowledge of a potential claim against Coffman until at least June or July of 2008.

Accordingly, because the investor plaintiffs have adduced evidence creating a genuine dispute of material fact as to whether James possessed actual knowledge of a potential TSA claim against Coffman and the Firm on approximately December 10, 2006, the defendants' motion for summary judgment as to this argument will be denied.

**B.     The Receiver's Claims**

---

[14] Again, Chen also testified that he believed that Coffman, being an attorney, must have been aware at the time of Milby's prior bankruptcy.

The defendants' argument urging dismissal of C&O's claims relies upon James Skinner's testimony that the funds entrusted to Coffman by MAE, MAO&G, and the investors belonged to the individual LLPs. The defendants thus argue that C&O lacks authority to recover those entrusted funds because the scope of the Court's Order in the *Waldemar* litigation appointing C&O as the receiver only extends to the assets of MAE and MAO&G. In responding that it possesses the authority to recover the entrusted funds by virtue of the fact that MAE and the LLPs are affiliates, C&O appears to assume, without explicitly stating, that the entrusted funds belong to MAE and MAO&G.

Nevertheless, having reviewed the parties' respective submissions, the court will deny summary judgment as to the receiver's claims. While Skinner may believe that the funds entrusted by MAE and MAO&G belonged to the individual LLPs, his belief does not establish that the funds constitute assets of those LLPs as a matter of law. Indeed, who possesses ownership of the entrusted funds is a legal question to be determined by the court. Based on the limited factual record presented here, the court is not in a position at this time to make such a determination.

## CONCLUSION

For the reasons expressed herein, the defendants' Motion for Summary Judgment (Docket No. 99) will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge